## HATCH BROTHERS COMPANY v. BLACK, ET AL.

(No. 884; Decided March 18th, 1918; 171 Pac. 267.)

PUBLIC HIGHWAYS—ROADS—DEDICATION OF RIGHT OF WAY—PERSONS
BOUND — ACCEPTANCE BY PUBLIC — PRESCRIPTION —·ACCEPTANCE A
QUESTION FOR THE JURY.

1. A dedication of a highway which is accepted by public user,
   while binding upon the dedicator and those holding under
   him, does not require the public authorities to maintain or
   care for the highway.
2. The distinction between a highway by prescription and one
   by dedication is that "prescription" is an adverse holding
   under color of right, while a "dedication," whether ex-
   pressed or implied, rests upon the consent of the owner.
3. What facts constitute an acceptance of a dedication and
   when such acceptance takes place are questions necessarily
   differing with each separate case, and are to be submitted
   to the jury under proper instructions.

ERROR to District Court, Uinta County; HON. JOHN R.
ARNOLD, Judge.

Heard on petition for rehearing. For former opinion,
see page 109, this volume; also 165 Pac. 518.

*B. M. Ausherman* and *N. E. Corthell,* for defendants in
error, on petition for rehearing.

The questions involved are of importance, and it is to be
regretted that the case was not argued orally. The action
is brought for an injunction to restrain defendants from in-
terfering with the use of an alleged highway through lands
owned by them, acquired under the public land laws in 1912.
By cross-petition, defendants sought damages for alleged
past trespasses on their lands. Plaintiff's action was of an
equitable nature, while defendant's cross-petition while in-
volving the highway question incidentally was a question
for the jury. Plaintiff relied upon the principle that a
highway may be established through user by the unofficial
public without official action. Defendants in error were
justified by expressions found in the two opinions in the
case of Commissioners v. Patrick, 18 Wyo. 130, in assum-

ing that such is not the rule in Wyoming. If it were admitted that the common law doctrine of highways is controlling, yet the evidence and contentions of fact of plaintiff did not justify a finding that a highway had been established; while the common law doctrine of highways has been invoked in the early history of many of the states and may be applicable to an old, settled agricultural community, it is inapplicable to our conditions. Illustrations of this are found in the following cases: Hecht v. Harrison, 5 Wyo. 289, 286; Cosgriff v. Miller, 10 Wyo. 190, 222; Martin v. Platte Valley Sheep Co., 12 Wyo. 432, 450; Haskins v. Andrews, 12 Wyo. 458, 471; Hardman v. King, 14 Wyo. 503, 509. The conditions which determine the doctrine of our courts on this subject are strikingly the same as the questions affecting the unofficial establishment of highways by the usage of travel in view of the vast areas of unsettled lands in public ownership used for grazing. This court has also referred to conditions which differentiate Wyoming from Great Britain rendering the common law doctrine of riparian rights locally inapplicable. (Moyer v. Preston, 6 Wyo. 308, 318; Farm Investment Co. v. Carpenter, 9 Wyo. 110, 122; Willey v. Decker, 11 Wyo. 496, 515; all of which are analagous.) The only statute of this state or territory which ever gave countenance to the common law doctrine was the statute of 1869, and which was in effect from 1869 to 1877, but the highway in question was not established during that period, and the statute was repealed in 1877, which enacted a law placing highways under the control of county commissioners (Laws 1877, p. 135), and that statute was amended in 1886 (Chapter 99), which was the statute in effect at the time the road in question was supposed to have become established. This act stood unchanged until 1895, whereupon a highway code was enacted. (Laws 1895, Chapter 69.) The effect of this later legislation was to confer broad powers of supervision upon the board of county commissioners in the establishment of highways. The act of Congress (R. S. 2477) was not intended to create highways, except post roads. (Const. U. S., Art. 1, Sec.

8.) For the reasons given, we think it is clear that no such an acceptance by the unofficial public was authorized. (Commissioners v. Patrick, supra.)

*Corthell, McCullough & Corthell, amici curiae.*

It is no part of the province of the Federal Government to establish highways within the limits of a state, except as incidental to the establishment of post roads, or to the regulation of interstate commerce. There is no federal common law as such. (Smith v. Alabama, 124 U. S. 465; Wheaton v. Peters, 8 Peters, 591, 658.) Counsel for plaintiff apparently relied upon the act of Congress (Sec. 2477) *ex proprio vigore* to establish the highway (U. S. R. S., Sec. 2477) ; which does not purport to establish highways, as it does not define their width, prescribe their location, or provide for construction or maintenance, nor does it regulate their use. A government grant is merely an offer requiring acceptance, and until there has been an authorized acceptance of this grant, it is a mere potentiality. Highway establishment is a function of state police power. (New Orleans Co. v. Louisiana Light Co., 115 U. S. 650; Jones v. Brim, 165 U. S. 180, 182.) The act should not be regarded as anything more than the offer of a proprietor to permit a highway to be established by constituted state authority. The contention of plaintiff is unsupported by statute or state decision. Plaintiff apparently relies upon expressions of opinion of the courts of Arizona, California, Colorado, Montana, Nebraska, Oregon and Washington. Reference is made to Copper Co. v. Reese, 12 Ariz. 224, 100 Pac. 777, and attention is then drawn to Duffield v. Ashurst, 12 Ariz. 360, 100 Pac. 820, citing with approval Montgomery v. Somers, 50 Ore. 259, 90 Pac. 674, discussed at length by plaintiff's counsel, but neither of the above cases support plaintiff's contention, for the reason that the result was governed by statutory provisions. The same is true of the California cases. (Bequette v. Patterson, 104 Calif. 282, 37 Pac. 917; McRose v. Bottyer, 81 Calif. 122, 22 Pac. 393.) The act of Congress in question is interpreted in the

case of Sutton v. Nicolaisen, 44 Pac. 805, 806. (See also Section 2618, Political Code of California, and U. S. v. Rindge, 208 Fed. 611, 617.) We understand that this court rested its original decision largely upon the authority of Sprague v. Stead, 56 Colo. 538, 139 Pac. 544. The Colorado statute (2 Mills, Sec. 3928) provides for the creation of highways by dedication to public use. (Starr v. People, 17 Colo. 458, 30 Pac. 64, 66; Lieber v. People, 33 Colo. 493, 81 Pac. 270, 271.) As to Montana, the statute appears to be substantially the same as that of California (R. C., Sec. 1337), and the establishment of highways by public user in Montana appears to be rested upon statutory authority. (Barnard Realty Co. v. City of Butte, 48 Mon. 102, 136 Pac. 1067.) The Montana authorities rest upon statutes. In the Nebraska cases cited, the effect of the Nebraska statutes was apparently not considered, but the Nebraska statute falls far short of the scope of the Wyoming statute; moreover, another statute of Nebraska authorizes the establishment of roads upon section lines. (2 Cobbey A. S., Sec. 6098.) Most of those cases show an attempt at least to establish highways by user and by some work performed under county authority. (Streeter v. Stalnaker, 61 Neb. 205, 85 N. W. 47; Eldridge v. Collins, 75 Neb. 65, 105 N. W. 1085; Cassidy v. Sullivan, 75 Neb. 847, 106 N. W. 1027; Van Wanning v. Deeter, 78 Neb. 284, 110 N. W. 703.) The Nebraska decisions cannot be considered persuasive authority on the question of the effect of the Wyoming statutes, since their own statutes do not seem to have been considered in reaching the conclusions. We are unable to find in the cases reported from Oregon an exposition of the statutory law of that state, and the common law rule has not been changed there. (Grady v. Dundon, 30 Ore. 333, 47 Pac. 915; Bayard v. Standard Oil Co., 38 Ore. 438, 63 Pac. 614; Nosler v. Coos Bay R. & E. R. Co., 39 Ore. 331, 64 Pac. 644.) A number of Washington authorities are cited in the brief of counsel, but they are apparently influenced by the Washington statute, and those cases can hardly be considered as precedents to be followed in

Wyoming. The court in its former opinion refers to cases from three additional states, the Kansas authorities appearing to place that court in the attitude of limiting the doctrine in cases where the decisions uphold highways to cases where there have been direct acceptance by legislative act, or an attempt at least on the part of public officers charged with the duty to establish highways. In other words, that court has rested its doctrine upon the statutes of the state rather than upon the common law. On examination of the authorities cited from Kentucky, it seems safe to assume that there was no statute casting any doubt upon the common law rule of establishment by user. The Tennessee decisions may be taken as establishing at least by dicta the recognition of the doctrine of common law establishment of highways by unofficial public user. The significant cases may be classified in three different groups: (a) Arizona, whose statutes and judicial decisions place it in the same position which Wyoming seems to occupy, where the methods of establishing highways prescribed by statute are held to exclude the operation of the common law doctrine. (b) California, Colorado, Montana and Washington, where the state statutes establish an opposing rule, and either by affirmance of the common law doctrine or by the creation of a new statutory rule fully justify and require the decisions of their courts set out in this brief. (c) Kansas, Kentucky, Nebraska, Oregon and Tennessee, where the statutes may or may not have been consistent with the common law rule. However, in the case of Nebraska, it seems to stand upon a footing of its own, and its judicial decisions seem to be in conflict with its statutory declarations. The authorities above discussed. appear to be affected by considerations tending to weaken their application to the case at bar, for the following reasons: (1st) In many of them, the questions of the highway were only incidentally involved; (2nd) in only a few was the question of the effect of the act of Congress involved; (3rd) in most of the cases, the highway rested to some extent upon official action of some sort; (4th) in a large portion, the statutes considered were dif-

ferent from those of Wyoming; (5th) generally, expressions of opinion as to the effect of unofficial public user and are obvious dicta; (6th) in none of the cases, with the exception of Arizona, was the effect of legislation considered at all comparable to that of Wyoming upon the common law doctrine. This court is therefore free from all embarrassment in the form of precedents from other states in considering this question under our statutes. The decision of this court in the case of Commissioners v. Patrick, 18 Wyo. 130, is the only authority forming a part of the interpretative law of the question. In many states, section lines were declared to be public highways by statute and such statutes are generally referred to as sufficient acceptance of the grant of Congress where roads so established pass over public lands. (Wells v. Pennington, 2 S. D. 1, 48 N. W. 305, 307, 308; Keen v. Board of Supervisors, 8 S. D. 558, 67 N. W. 623; Riverside Township v. Newton, 11 S. D. 120, 75 N. W. 899; Walcott Township v. Skauge, 71 N. W. 544, 545; Faxon v. Lallie Civil Township, 163 N. W. 531; Mills v. Glasscock, 26 Okla. 123, 110 Pac. 377. See also Cross v. State, 147 Ala. 125, 41 So. 875, 876.) We have been unable to find that the common law doctrine of establishment by unofficial user existed at the time when the American Colonies separated from the parent country, much less can the rule be traced upon which the common law was qualifiedly adopted in Wyoming. (Comp. Stats., Sec. 3588.) Mr. Angell in his work on highways attempts to trace the origin and development of the common law rue (Sections 157-158), leaving the question very much unsettled. The subject was discussed by Mr. Elliott on Roads and Streets, p. 117, and in 37 Cyc. 18, but the general effect of the authorities relied upon leaves one in doubt whether the rule casually spoken of in many cases, as the common law rule, is entitled to that dignity, and there is doubt whether the rule, if established at common law, was ever enforced in Wyoming, and if it was, the question remains whether the rule has been repealed by legislative authority, since only laws of a general nature and not inapplicable and not local

to England come within the declaration of adoption. (Comp.
Stats., Sec. 3588.)    This court has made frequent refer-
ence to the inapplicability of common law rules to our con-
ditions, in cases where the effect of such rules has been
denied.    A variety of illustrations with reference to the
duty of owners of domestic animals to restrain them from
running at large are found in the following cases:   Hecht
v. Harrison, 5 Wyo. 279, 286; Cosgriff v. Miller, 10 Wyo.
190, 222; Martin v. Platte Valley Sheep Co., 12 Wyo. 432,
450; Haskins v. Andrews, 12 Wyo. 458, 471; Hardman v.
King, 14 Wyo. 593, 509.    Also with reference to water
rights:  Moyer v. Preston, 6 Wyo. 308, 318; Farm Invest-
ment Co. v. Carpenter, 9 Wyo. 110, 122; Willey v. Decker,
11 Wyo. 496, 515.    (See also Reno Smelting Works v.
Stevenson, 20 Nev. 269, 21 Pac. 319; Boquillas Land &
Cattle Co. v. Curtis, 11 Ariz. 128, 141, 89 Pac. 504, 213 U.
S. 339; Van Ness v. Pacard, 2 Peters, 137, 144; Fulmer v.
Williams, 122 Pa. St. 191, 15 A. 726, 727; Parker v. Foote,
19 Wend. 309, 318; Kerner v. McDonald, 60 Neb. 663, 84
N. W. 92; Bowers v. Suffolk Mfg. Co., 4 Cush. 332, 340.)
The common law is impliedly repealed by statutes inconsist-
ent therewith.    (8 Cyc. 376.)    Specific illustrations are
found in the following cases:   People v. Goddard, 8 Colo.
432, 7 Pac. 301; In re. Lord & Polk Chemical Co., 7 Del.
Chan. 248, 44 Atl. 775, 777; Hamilton v. Schoenberger, 47
Ia. 385, 387; State v. George, 226 Mo. 717, 120 S. W. 35,
43; Com. v. Dennis, 105 Mass. 162; Drady v. District
Court, 126 Ia. 345, 102 N. W. 115, 117; Graves v. Illinois
Cent. R. Co., 148 S. W. 239, 243; Rio Grande Western Ry.
Co. v. Salt Lake Inv. Co., 35 Utah, 528, 101 Pac. 586, 591;
Raleigh County Bank v. Poteet, 82 S. E. 332.    The opinion
in the Patrick case seems to establish the fact that Wyo-
ming legislation is inconsistent with the common law rule,
as the history of our legislation on the subject is carefully
traced in that opinion.    It would appear that from 1886
county roads could not be established except by authority
of the board of county commissioners, and that under the
statute in its present form, roads became public only in one

of three ways, viz.:   (a) By direct act of Legislature; (b) by establishment by the board of county commissioners; (c) by the concurrence of all of the following conditions, viz.:   Designation as highways on government maps in the United States Land Office; by being publicly used as traveled highways; not having been vacated by the county commissioners.   Comp. Stats. 1910, Sec. 2435, authorized county commissioners to receive donations of rights of way for public roads, and to declare roads established under such conditions without further formality, for the conferring upon the commissioners and not upon the general public power to accept donations of this class.   The question involved is a state and not a federal question.   Dedication by a proprietor requires some form of lawful acceptance by the police power of the state to give it effect.   The law of Wyoming determining this question must be either statutory or common law, and we must resort to legislation to determine what the law is.   Aside from the inapplicability of the so-called common law rule to conditions in Wyoming, it is certain that the act of 1886 left no further room for its operations.   The legislation of Wyoming has been of sufficient scope to fully occupy the field, so that we believe it is clear that the establishment of highways by unofficial user could not have been operative in Wyoming since 1886. The reliance of the trial court upon existing statutes and upon the reasoning in the Patrick case seems to have been fully justified.

*Bagley & Ashton* and *Payson W. Spaulding,* for plaintiff in error.

Points urged on rehearing are not intrinsically different from those alleged in the original controversy.   The trend of the argument is that this road was established accidentally, which is erroneous.   The evidence shows that it was established many years ago and has been generally used since.   The act of 1886 preserves rights acquired under the old law.   This road was established as early as 1875 or 1876 and traveled since then as a public highway.   Later legisla-

tion did not divest rights acquired therein by the public. The act of 1869, in effect at the time of the establishment of this road, recognizes as public highways all roads used in travel by the public. It is no answer to say that in 1909 this court in the Patrick case (104 Pac. 531, 107 Pac. 748) held that a road could not be established over private lands by prescription or implied dedication. The doctrine of implied dedication was recognized as a part of the common law. (Kent's Commentaries (7th Ed.), pp. 554-5; Lade v. Shepherd, King's Bench, 1735, reported 2 Stra. 1004; Gray's Cases on Real Property, Vol. II, p. 580; Bateman v. Bluck, Queen's Bench, 1852, 18 Q. B. 870.) It was later recognized in this country in Hobbs v. Lowell, 19 Peck, 406 (Mass.); Rex. v. Lloyd Campbell, 260 Rugby; Charity v. Merriweather, 11 East. 376; Stafford v. Coyney, 7 Barn. and Cresswell, 257; Woodyear v. Hadden, 5 Taunt. 137.) Enjoyment for a great length of time ought to be sufficient evidence of dedication unless the state of the property has been such as to make dedication impossible. (Regina v. East Mark, 11 Ad. and E. N. S. 877; Elliott on Roads and Streets (3rd Ed.), Sec. 171.) There is no obligation upon the county to lay out money for repairs. (L. R. A. N. S. 1917 A. 350, 13 Cyc. 466.) The contention that the common law doctrine has been contravened by statute in Wyoming does not apply, since the highway was established long prior to the enactment of the statutes relied upon by defendant in error. The act of 1869 especially recognized the common law doctrine. (See Chap. 26, p. 330; Comp. Stats. 1876, Chap. 102, Sec. 15.) Said statute was then in force and has been in force since. (See S. L. 1866, Chap. 99, Sec. 32, p. 385; R. S. 1887, Title 44, Sec. 3890, p. 824; S. L. 1895, Chap. 69, Sec. 57, p. 141; R. S. 1899, Chap. 3, Sec. 1961, p. 569, and Comp. Stats. 1910, Chap. 170, Sec. 2571, p. 675.) The act of 1877 relied upon by *amici curiae* did not repudiate any of the foregoing sections, as to the doctrine of public user. The next legislation was in 1886 (Chap. 99, Sec. 40), which contains a saving clause as to road rights heretofore acquired. This was violated by Chap. 99, Laws

1890-1891. Section 1 contained a clear distinction between county roads established by county authority and other roads, a recognition that such other roads exist. Chapter 69, Laws 1895, again modified the law without disturbing prior rights. (See Comp. Stats. 1910, Secs. 2513-2514.) There is also a provision found at Section 23 for the establishment of roads by consent. (See Comp. Stats. 1910, Sec. 2535.) The repeal clause found in the act of 1895 contains a saving clause. (See Sec. 64, Ch. 69.) No reason has been pointed out by *amici curiae* wherein the court erred in the decision heretofore rendered, and we submit that the same should stand.

*Corthell, McCullough & Corthell, amici curia,* in reply.

Counsel for plaintiff in error discussed the effect of the evidence; the distinction between county and other roads; the common law rule of establishment by user; the saving clause of the statute of 1895. We do not believe that the evidence refers to a period earlier than 1889. As to the difference between county roads and other highways, the argument of plaintiff in error leaves us in doubt as to the exact theory contended for. The common law recognizes the distinction between "great" ways and local ways of the parishes of more restricted use, of a private or semi-private character. (Jones v. Andover, 6 Pick. 59, 62; Harding v. Inhabitants of Midway, 10 Met. 469; Inhabitants of Wells v. County Comrs. of York County, 79 Me. 522, 11 Atl. 417; Butchers v. City of Boston, 139 Mass. 290, 30 N. E. 94; Denham v. Bristol County, 108 Mass. 202.) No such distinction is recognized by the Legislature of Wyoming. The distinction is denied by the Washington Court. (Murphy v. County, 88 Pac. 1115 (Wash.), and also State v. County, 17 Oh. 184-186.) Until recently the sole public authority in the establishment of highways in Wyoming was the Board of County Commissioners. (C. S. 1166, Sub. 7.) In view of the history of our legislation on the subject, the road in question did not become a highway except by authority of the county commissioners, or by direct act of the

Legislature. The reference to the establishment by consent under Section 23 of the act of 1895 is not stated according to its full import and certainly a highway established under this statute requires the consent of the owner of the land and the consent of the county board. The allegations and proofs in this case do not relate to a period prior to 1877 or perhaps 1886, hence those statutes are not a part of the law of the case as presented. Kent's Commentaries are cited (7th Ed.) in support of contentions of plaintiff in error. Not having access to that edition, we refer to Vol. 3 of the 13th Ed., p. 450, which clearly indicates that the general rule is that acceptance of a highway ancient in character must be shown to have been with the assent of the town liable to repair. It is somewhat significant that this subject is not mentioned at all in Coke upon Littleton, nor discussed in Blackstone's Commentaries, and if the doctrine were well established and of ancient origin, it seems that it would hardly have escaped the notice of all these authors from Coke to Kent. In Cooley's Edition of Blackstone, Book 2, p. 35, reference is found in a footnote to the effect that the mere fact that any number of individuals passed through a passage left open to them does not constitute an acceptance, but if the proper highway authorities treat it as a public highway by working expenditures, they may accept it. The statute of 1895 declaring all roads that have been designated or marked as highways on government maps to be public highways refers to past action and not to future service.

BLYDENBURGH, JUSTICE.

Defendants in error filed a petition for rehearing herein, and additional counsel joined therein and requested to be heard and stated in their brief that "the establishment of a highway by acts of the unofficial public is a question of immense import" and "much public interest has been manifested in the opinion of the court on this question since it was first handed down," and "it is to be regretted that the case was not argued orally and that it was not submitted to

the consideration of a full bench." On account of these suggestions and representations an oral argument was ordered on the petition for rehearing, and a very able and exhaustive argument of the question involved was heard by a full bench and elaborate briefs were filed in addition to those originally filed in the case.

It was admitted at the argument on this hearing that the case would have to be sent back for a new trial for the reasons stated in the opinion relating to the evidence as to damages, and it is not sought to change the judgment of this court in that respect, but it is contended that this court was in error in holding virtually that a highway could be established in Wyoming by an acceptance of the grant or dedication by the federal government under the act of July 26, 1866, by user by the public without any official act on the part of the county authorities. In fact this is the only question presented by the petition for rehearing. The general law on the subject is well stated in 13 Cyc., page 465:

"An offer of dedication, to bind the dedicator, need not be accepted by the city or county or other public authorities, but may be accepted by the general public—to deny this would be to deny the whole doctrine of dedication. The general public accepts by entering upon the land and enjoying the privileges offered—or, briefly, by user. Except when user is relied on to raise a presumption of dedication, the duration of the user is wholly immaterial. It is not necessary that such user should continue any definite length of time, or that so long as the persons enjoying it have done so as members of the general public and not as neighbors or licensees, or otherwise in their individual capacity, they should be of any defined number. While no dedication will be presumed from user alone unless the user has been so long and so general that the public convenience would be materially affected by its interruption, no such requirement applies strictly as to the user which constitutes the acceptance of a dedication otherwise established, it being only necessary that those who would naturally be excepted to

enjoy it do, or have done so, at their pleasure and convenience."

That this doctrine obtained in Wyoming, and that there can be an acceptance of the federal dedication by user under the laws of the territory of Wyoming, at least prior to 1886, is evident from the statutes as quoted in the original opinion herein and was admitted at the hearing, but it was contended that the statutes of the territory beginning with 1877, perhaps, and certainly from 1886, and the statutes of the state since its admission, especially the act of 1895, are inconsistent with an acceptance by public unofficial user of the federal grant and in fact repealed the common law right originally recognized. The congressional act of 1866 was passed to give the public a right of way over the public lands of the United States that they could not have acquired in any other way.

"The object of the grant," it was said in Wells v. Pennington County (1891), 2 S. D. 1, 39 Am. St. Rep. 758, 48 N. W. 305, 39 Am. St. Rep. 758, "was to enable the citizens and residents of the states and territories where public lands belonging to the United States were situated to build and construct such highways across the public domain as the exigencies of their localities might require, without making themselves liable as trespassers. And when the location of the highway and roads was made by competent authority or by public use, the dedication took effect by relation as of the date of the act; the act having the same operation upon the lines of the road as if specifially described in it. * *. * * The parties to a dedication are the owners and the public; and it must be remembered that the public is an ever-existing grantee, capable of taking dedications for public uses, and its interests are a sufficient consideration to support them."

This dedication by Congress to the public of rights of way for highways over the public lands of the United States is a valuable right and it is not to be presumed that the Legislature in this state, where distances are great, county funds from taxation applicable to road work comparatively

small and ·inadequate to meet the demands of the inhab-
itants in different parts of the county, where roads in new
and sparsely settled portions of the state of necessity have
to be made and traveled by the public without the aid of the
county authorities, intended to abrogate and annul this
right and open the way to legalized blackmail of the county
authorities by fencing up such used roads and requiring the
county thereafter to condemn and pay damages for a way
otherwise belonging to the public, unless such intention is
so clearly expressed by the enactment that no other conclu-
sion can be reached.   This was especially true at the time
of the passage of the act of Congress in 1866 in the then
mountain territories and there were. few public authorities
that could take charge of roads and highways, the taxable
property from which funds could be raised was so small
as to be negligible and the distances so. great between set-
tlements, the only methods of transportation, even for the
necessaries of life for the most part, were wagons or pack
trains, it must have been necessarily presumed that the ac-
ceptance of this grant by user by the general public was to
be the usual one.   The grant has been held to be one in·
*presenti,* although floating in character until the *locus in
quo* is established, either by legislative action as in those
jurisdictions which declared all section lines public roads,
by surveys by the public authorities or by the becoming
definitely marked upon the ground by public user, either of
which methods becomes an acceptance and all subsequent
settlers or locators took the land from the government sub-
ject to the easement of the public thus granted.   The or-
iginal act of 1869, in the first section, mentions all the dif-
ferent kinds of highways and recognized the common law
doctrine of establishment of highways by user without de-
claring any specific method or enacting any new law in this
regard.   It will be observed that the early act, while pre-
scribing the method by which roads might be changed,
altered, or new roads laid out by the county, does not any-
where enjoin on the county authorities the duty to maintain
or keep in repair the highways mentioned in the act.   The

conditions at the time of this act were much the same in Wyoming as stated above at the time of the passage of the congressional act, and the five counties of the territory extended from Colorado to the Montana line, taxable property was small in amount, distances to be traveled were great, and the settlements far apart.

This act remained in force until the act of March 12, 1886, which appears as Chapter 99, Laws of 1886, and was entitled an act concerning roads and highways. The first section of this act is as follows:

"That all county roads shall be under the supervision of the board of county commissioners of the county wherein said road is located, and no county road shall be hereafter established, nor shall any such road be altered or vacated in any county in this territory except by authority of the county commissioners of the proper county."

This is the first legislative word in Wyoming that specifically placed any roads under the supervision of the county commissioners and enjoined a duty upon the county officials to maintain and keep them in repair. This act provides for the election or appointment of road supervisors and prescribes their duties, and the means for working the roads, but it is significant that wherever a duty is imposed by the act upon county officials in this chapter, it mentions *county* roads, and prescribes the width of *county* roads, etc. This act repeals in terms the act of 1869, which had become Chapter 102 of the Compiled Statutes of 1876, but did not repeal any common law doctrine thereby, and that it still recognized that the congressional grant could be accepted by public user and that other highways existed and could be established besides those county roads provided for in the act in regard to which a duty of maintenance and repair was imposed upon the county officers is shown by Section 32, which was as follows:

"When any public road, heretofore laid out or traveled as such or hereafter to be laid out or traveled as a public road, crosses any stream of water, and such stream is at any time during the year fordable where such road

crosses or shall cross the same, the said ford and the banks of the stream adjacent thereto, and the roadway or track usually traveled leading to and from such highway, to and from such ford, shall be deemed and taken to be a part, portion and continuation of such public road and highway. Any person who shall obstruct any such ford, or the road leading thereto, * * * * shall be liable to the same penalties as for obstructing a public highway."

This clearly recognizes the right to establish public roads by travel or public user without action by the public authorities. This act clearly shows that the object sought to be accomplished by the Legislature was prescribing those roads and highways in regard to which a duty was imposed to maintain or keep in repair. And this is in accord with the authorities that a dedication for a highway which is accepted by public user, while binding upon the dedicator and those holding under him, does not require the public authorities to maintain or care for the highway.

"Although the rule is almost unquestioned that user by the general public will not, in addition to binding the dedicator and consummating the dedication, bind the public authorities so that they will be responsible for its care and maintenance, this subject has presented difficulties and has caused confusion. The general rule is that the public by user cannot so accept as to bind the municipality." (13 Cyc. 466.)

The act of 1890 did not in any way change the law in this respect and the act of 1891 merely amended the act of 1890, although it amended the first section of the act of 1890 by specifically adding to the declared public highways others beside *county* roads, and then specifically declares, as in the acts of 1866 and 1890, that *county* roads shall be under the management and control of the county commissioners and shall not be established or vacated except by them. The act of 1895, which is the present law of the state at all affecting this matter, in Section 1, re-enacts the first paragraph of the law of 1891, and adding "national" to state, territorial and county roads, then enacts, in a separate sent-

ence, the provision which led to the instruction declared erroneous in the original opinion in this case:

"All roads that have been designated or marked as highways on government maps or plats in the record of any land office of the United States within this state, and which have been publicly used as traveled highways, and which have not been closed or vacated by order of the board of the county commissioners of the county wherein the same are located, are declared to be public highways until the same are closed or vacated by order of the board of county commissioners of the county wherein the same are located, and the board or officer charged by law with such duty shall keep the same open and in repair the same as in the case of roads regularly laid out and opened by order of the board of the county commissioners."

This provision clearly designates such roads as are to be added to those which the county authorities are required to maintain and repair and in no way affects other highways upon which this duty may not be imposed. It is especially significant that this act places in a separate section the provision regarding the *county* roads which was contained in the one section of the former act, Section 2 being as follows:

"All county roads shall be under the supervision, management and control of the board of the county commissioners of the county wherein such roads are located, and no county road shall hereafter be established, altered or vacated in any county in this state, except by the authority of the board of the county commissioners of the county wherein such road is located, except as in this act provided."

Other sections of this last act as to width of *county* roads are substantially the same as in the former acts and the act re-enacts without change, in Section 57, Section 32 of the act of 1886 containing these significant words: "When any public road heretofore laid out or *traveled as such* or *hereafter* to be laid out or *traveled as* a public road," etc. This is carried into the Wyoming Compiled Statutes as Section 2571 and is the present law of the state, clearly recognizing

the right of the public by traveling a road as a public road to accept the congressional grant or dedication. The repealing section of this act (Section 64), after repealing each of the prior statutes regarding roads and highways, expressly enumerating them, closes with these significant words: "Any and all rights obtained by, secured to, or *vested in the public* or any person, corporation or association of persons under laws existing at the time of the taking effect of this act are hereby preserved and *continued in force* the same as if this act had not been passed." It is evident it was not the legislative intention to take from the public a valuable right of acceptance of the federal grant, but to preserve to it every and all rights it had.

While doubtless the county commissioners could accept the federal dedication by survey and other acts fixing the locus of a road over the public domain, such method or a direct act of the Legislature is not exclusive of an acceptance by the public by unofficial user, as has been held in those states where section lines had been designated as highways. In the case of Cemetery Association v. Meninger, 14 Kan. 312, Justice Brewer, in holding a dedication could be established by user, on page 316, said: "No formal acceptance by any particular authorities is essential. The mere user by the public may be of such a character as to constitute an acceptance. Indeed such user by the public with a knowledge of the owner may be sufficient evidence of both the dedication and the acceptance. We know this doctrine is denied by some courts, but it seems to us to rest upon the soundest principles."

Although it was pointed out in the original opinion that in the case of Commissioners v. Patrick, 18 Wyo. 130, 104 Pac. 531, 107 Pac. 748, this court was "considering the question of the establishment of a highway over private lands by prescription, and that the federal grant was not involved in the case," counsel is persistent in claiming that the Patrick case settled by its holding and reasoning the question here involved and says: "Highways by prescription rest upon implied dedication. We believe it is univer-

sally held that in all cases where highways may be or have been established by public user for the length of time required in the local jurisdictions to create the right, such right has always rested upon the supposition or presumption of an original dedication by the owner." Counsel is in error in this statement, and does not seem to grasp the great distinction between a highway by prescription and one by dedication. Prescription is an adverse holding and under color of right. Dedication, whether express or implied, rests upon the consent of the owner, and while it is not necessary to invoke common law fictions or fallacious presumptions to sustain modern short time statutes of limitations which are well designated statutes of repose fixing time within which actions may be commenced, it is said in 37 Cyc., pages 18 and 19: "By the better opinion, however, the doctrine of prescription, as applied to highways, is based on the presumption of an antecedent exercise of the power of eminent domain by the proper authorities." And a large number of authorities from many states are cited in the notes to sustain the text.

The word "user" has been invoked in three different ways and purposes in the various cases relating to highways, first, where it is sought to hold that a highway may be acquired by prescription in adverse user and under color of right, and where there is any definite entity as the county officials upon whom it devolves to assert this right as hostile and adverse to the owner, it is generally held that the evidence must show some attempt at least to assert a right by such officials, and it was so held in the Patrick case. Second, where it is attempted to show that a highway exists, not by adverse user, but by acquiescence of the owner and user by the public, where it is held that a long user by the public without objection from the owner is necessary to imply a dedication as well as an acceptance by the public. And, third, where there is an express dedication and acceptance of the same is sought to be shown by user in any of the ways stated above. Only the third class has any application to the matters involved in this case, the acceptance of the

federal grant, but counsel and some courts have not clearly separated the doctrines applied to the different classes of cases in which this matter of user is discussed. This court, in both of the opinions in the Patrick case, very carefully confined its statements to the matter under consideration, viz.: to questions of a highway by prescription over privately owned lands, and the numerous quotations from that case in counsels' brief show that the court confined its statements to matters relating to prescription. The first quotation used is as follows: "The question * * * * is, can a road so located be diverted from its original course to and over lands of another, *in the absence of dedication by the owner,* without official action or the assumption of control by the board, and by long continued use by the public, become a public or county road?" And the next quotation: "In addition to the use of the road by the public *in the absence of a dedication, express or implied,* by the owner of the land, other than by his mere silence, assumption of control and jurisdiction over it by the board of county commissioners for the period of limitation should be shown." (Italics are ours.)

This last quotation states in a nutshell the whole matter of what was decided in the Patrick case. These expressions not only expressly do not apply to matters of dedication and not even implied dedication was considered, but at least infer that in cases of dedication a road may become a public highway by public user. And so as to the other quotations from the Patrick case in each, by specific language the things said are limited to the question of prescription. The one relative to the absence of a statute in Wyoming may serve as an example: "There has never existed in this state a statute to the effect that the mere use of a road by the public *may ripen into a title or right thereto by prescription,* but in some states there is such a statute, which is held to qualify the common law rule."

It is not necessary to pursue this discussion further. We hold, as in the original opinion, that there is nothing in our statutes that takes away the right of the public to accept

by unofficial user the federal grant of rights of way over the public domain so as to bind subsequent grantees of the government, but our statutes seem to distinctly recognize that right. As to what facts will constitute an acceptance or when such acceptance takes place are questions that will of necessity differ with each separate case, and such are to be submitted to the jury under proper instructions of the court. A rehearing will be denied. *Rehearing denied.*

POTTER, C. J., and BEARD, J., concur.